# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA**
        Plaintiff,

    v.                                            Case No. 05-CR-255

**HAROLD KIRBY**
        Defendant.

---

## SENTENCING MEMORANDUM

Defendant Harold Kirby pleaded guilty to armed bank robbery, contrary to 18 U.S.C. §§ 2113(a) & (d). Without objection, the pre-sentence report ("PSR") set his offense level at 22 (base level 20, U.S.S.G. § 2B1.3(a), plus 2 because the property of a financial institution was taken, § 2B3.1(b)(1), plus 3 because a dangerous weapon was possessed, § 2B3.1(b)(2)(E), and minus 3 for acceptance of responsibility, § 3E1.1), and his criminal history category at VI, producing an imprisonment range of 84-105 months under the advisory sentencing guidelines.

Upon consideration of all of the factors under 18 U.S.C. § 3553(a), I imposed a sentence of 72 months. In this memorandum, I set forth the reasons.

## I. SENTENCING FACTORS

In imposing sentence, the court must consider the § 3553(a) factors, which include:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     the need for the sentence imposed–

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the advisory guideline range;
>
> (5) any pertinent policy statements issued by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities; and
>
> (7) the need to provide restitution to any victims of the offense.

After considering these factors, the statute directs the court to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2).

## II.  DISCUSSION

### A.  Nature of Offense

Defendant robbed the Chase Bank in Kenosha, Wisconsin of nearly $6000 by pointing a BB gun at two tellers, placing a plastic bag on the counter and stating "fill it up." After collecting the money, he walked out the main entrance to the bank and fled in his own car, which was parked a short distance away. He wore no disguise and was quickly identified by several people from the bank surveillance camera. About a week later, he was stopped for a traffic violation in Illinois and taken into custody. He quickly confessed when questioned about the robbery by investigators, stating that at the time he was separated from his wife, essentially homeless and desperate for money.

The robbery appeared to be poorly planned and was not completed in a malicious manner. Defendant wore no disguise, made no direct threats and did not use a real gun.[1] The teller who responded to the probation office's inquiry about the matter stated that she did not think defendant wanted to shoot anyone. Nevertheless, the teller was affected by the experience, had nightmares about it, and stated that it caused her to be more cautious and her family to worry about her. She reported being jumpy when a black man came into the bank, which made her feel like she was stereotyping.

In sum, this was a very serious crime, which caused emotional harm to the teller in addition to the financial harm to the bank. However, for the reasons stated, it was not aggravated in its particulars. Moreover, defendant pleaded guilty and accepted responsibility for his actions in court. I was impressed by his allocution, in which he displayed genuine remorse and concern for the effects of his conduct on his minor son. He also wrote letters to the tellers apologizing for his crime prior to sentencing.

**B.     Character of Defendant**

Defendant was 40 years old with a lengthy criminal record. However, the record was somewhat odd in that his first offense, for armed robbery, occurred in 1986 when he was 20 years old. He sustained no other convictions until 1999, when he was convicted of issuing a worthless check. He then picked up convictions for resisting an officer, drunk driving, retail theft, disorderly conduct, possession of heroin, bail jumping and theft between 2000 and 2005. In comparing his criminal record with his employment record, it

---

[1] The government noted at sentencing that the weapon was not recovered, and we had only defendant's word that it was a BB gun. However, there was no evidence that it was an actual firearm, and I adopted the finding in the PSR that it was a BB gun, without objection.

appeared that he was working and behaving in a pro-social manner for much of the 1990s, but began committing crimes around the time he was fired from his job as a machine operator for failing a drug test. He continued to abuse heroin thereafter, which led to more problems. He separated from his wife, Yolanda, whom he married in 1990, in July 2005, and the instant offense occurred shortly thereafter.

Thus, while defendant's record was lengthy, the individual offenses, aside from the 1986 armed robbery, were mostly drug- and alcohol-related or petty thefts. For instance, his two retail theft convictions involved shoplifting a pair of work boots and driving away from a gas station without paying the $19 he owed. The disorderly conduct conviction arose out of a domestic dispute with his wife during which defendant was high on heroin. Further, despite his history of drug abuse, defendant never had any sustained drug treatment, which he plainly needed.

Defendant had a significant employment history, much of it consisting of short term temp jobs, but he did hold the machine operator position from 1995 to 1998 and worked for Kenosha Beef from 1992 to 1995. He dropped out of high school but later got his GED and took some college courses. Clearly, defendant was a person with potential, who could succeed in society.

Defendant also had solid family support. His wife of 15 years stated that she planned to stand by him. She wrote a positive letter about defendant, as did his 14 year old son. I also received positive letters from defendant's mother, brother and sister. Several family members appeared in support at defendant's sentencing.

4

### C. Purposes of Sentencing

Obviously, this was a very serious crime, and I had to impose a substantial prison sentence to promote respect for law, provide just punishment and deter others. Defendant's record suggested a risk of recidivism, but his background also revealed that he could behave in a pro-social manner for an extended period if sober and employed. He clearly had substance abuse issues, but under the circumstances I had to deal with them through recommendations to the Bureau of Prisons and conditions of supervised release. The victim-bank was owed $5890 in restitution.

### D. Consideration of Guidelines

The guidelines called for a term of 84-105 months. I concluded that a sentence within the range would be slightly greater than necessary to satisfy the purposes of sentencing.

First, although his record was lengthy, the "countable" offenses were mainly drug-related or petty thefts. It was certainly not the usual record of category VI offender. Second, and relatedly, defendant's background suggested that he could succeed in society. In fact, for nearly 15 years in the late 80s and 90s he stayed out of trouble and worked. If able to get his drug problem under control, find a steady job and reconcile with his wife, he could be an asset to society and his family. The strong family support reflected in the letters – and evidenced by the appearance of several family members at sentencing – would also assist in his rehabilitation.

Third, the guidelines did not fully capture the relatively mitigated nature of the offense, described above. In this regard, I also considered the victim impact statement,

5

which did not make a specific sentencing recommendation and did not seem to view defendant an evil person or the crime as an aggravated one.

Fourth, defendant had not done serious time on his previous convictions. In fact, he was typically placed on probation for his crimes, but later revoked and sentenced to short terms in jail. I imposed an incrementally longer sentence on the instant offense, but a guideline prison term was not necessary to deter him or provide just punishment. See United States v. Qualls, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend.").

Fifth, I considered the fact that defendant was 40 years old, and data from the Sentencing Commission indicate that individuals in their 40s and 50s are much less likely to re-offend than younger defendants. See United States v. Ali, No. 1:05-53, 2006 U.S. Dist. LEXIS 29461, at *13 (E.D. Va. Apr. 17, 2006) (citing United States Sentencing Commission, Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines, at 12 (May 2004)); United States v. Nellum, No. 2:04-CR-30, 2005 U.S. Dist. LEXIS 1568, at *9 (N.D. Ind. Feb. 3, 2005) (discussing how recidivism rates fall with advancing age). Defendant would be in his mid-40s by the time he finished this sentence, and combined with the fact that I required him to undergo intensive drug treatment for the first time, I believed that he would be less likely to re-offend than the guideline range suggested.

Finally, I considered defendant's life circumstances at the time he committed the crime – separated from his wife, unemployed and homeless. While certainly not an excuse

6

for robbery, they did shed some light on how he came to commit this offense, which seemed out of character given his conduct for the past 20 years.

### III. CONCLUSION

For all of these reasons, I found a sentence of 72 months, one year below the advisory range, sufficient but not greater than necessary to satisfy the purposes of sentencing. This sentence adequately punished defendant for the serious crime he committed while recognizing the positive and mitigating factors discussed above.

Therefore, I committed defendant to the custody of the Bureau of Prisons for 72 months. I recommended that he be placed at a prison as close to his family as possible, and that he participate in any drug treatment programs available, including the 500 hour program.

Based on his financial situation and the amount of restitution due, I determined that defendant did not have the ability to pay a fine and so waived the fine. However, he was required to make restitution in the amount of $5890 to Chase Bank and pay a special assessment of $100. I ordered that he begin paying on both obligations immediately under the following terms: While in prison, I required defendant to participate in the Inmate Financial Responsibility Program and apply no less than 50% of his prison earnings to his financial obligations; upon release, I required him to make payments of not less than $100 per month.

I further ordered defendant to serve a five-year supervised release term. I imposed the maximum period of supervision to ensure that defendant was monitored for future law violations, dealt with his treatment needs and found legitimate employment, which I considered essential to his success in the community. In addition to the standard

Case 2:05-cr-00255-LA    Filed 05/19/06    Page 7 of 8    Document 18

conditions, I ordered that he participate in a drug aftercare program (including residential treatment if necessary), make regular restitution payments, and complete the cognitive intervention program. Other conditions appear in the judgment.

Dated at Milwaukee, Wisconsin, this 19th day of May, 2006.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge